IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:20CV423 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $28,727.23 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1.    This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange.

2.    This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3. The defendant property is $28,727.23 in U.S. Currency, which was seized on September 11, 2019, from William Charles FRYE, III, in Archdale, North Carolina, and is currently in the custody of the United States Marshals Service.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A, attached hereto and wholly incorporated herein by reference.

- 2 -

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 12th day of May, 2020.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


/s/ Lynne P. Klauer
Lynne P. Klauer
Assistant United States Attorney
NCSB #13815
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336) 333-5351
Email: lynne.klauer@usdoj.gov

- 3 -

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Anthony T. Cugino
Task Force Officer
Drug Enforcement Administration

# DECLARATION

I, Anthony W. Cugino, Task Force Officer with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state pursuant to Title 28, U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following information is true and correct to the best of my knowledge, information and belief:

1.  I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a Task Force Officer with DEA since March 2016, and I am currently assigned to the DEA, Atlanta Field Division, Greensboro Resident Office. I am also an Archdale Police Officer, and have been employed as a law enforcement officer since 2006. In March 2010, I was assigned to the Archdale Police Department Criminal Investigation Division. My primary responsibilities are to investigate drug complaints in Archdale. I have a Bachelor of Science Degree in Criminal Justice from Liberty University. I have received over (2100) hours of police related training, to include training in the purchasing of drugs/narcotics through various street level operations, which involve the use of confidential sources. I have also worked numerous cases in an undercover capacity and purchased illegal substances. I have attended a Police Law Institute class, which focuses on police search and seizure. I have completed a (40) hour block of instruction in Interview and Interrogation. I am a Field Training Officer for



the Archdale Police Department and have been responsible for training new police officers since February 2009. I have obtained my Advanced Law Enforcement Certificate, given by the North Carolina Criminal Justice Training and Standards Commission. I have participated in hundreds of cases that involved violation of the North Carolina General Statutes that govern controlled substances and related crimes. In the time that I have been in Law Enforcement, I have written at least 50 search warrants and participated in the execution of over 80 search warrants. I have made over 100 drug arrests which resulted in both State and Federal prosecutions. I have purchased Cocaine, Crack Cocaine, Marijuana, Heroin, Ecstasy and Methamphetamine "ICE" while acting in an undercover capacity. Because of my training and experiences, I am aware of the different types of controlled substances and the way controlled substances are packaged, distributed, and sold.

2.     This declaration is submitted in support of a Verified Complaint of Forfeiture for $28,727.23 in U.S. Currency seized on September 11, 2019, from William Charles FRYE III.

3.     Based on the investigation described below, there is probable cause to believe that $28,727.23 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

4.     The facts and circumstances set forth in this Declaration are based upon information provided by other law enforcement officers and my own personal knowledge and experience. Since this declaration is being submitted for a limited purpose, I am not

2

including all the facts and information, which I have learned about or obtained during the course of this investigation.

5.      On Wednesday, September 11, 2019 at 3:53 a.m., Lieutenant Baxley from the Archdale Police Department (APD) was patrolling the parking lots of Hampton Inn and Holiday Inn Express on North Main Street in Archdale, North Carolina. There have been numerous vehicle break-ins and larcenies in the parking lots of these two hotels. Upon Lt. Baxley's arrival to the intersection of North Main Street and Ashland Street, he observed a black BMW 328i (the "vehicle") parked across Ashland Street, with its parking lights on. Lt. Baxley feared the vehicle was possibly a lookout vehicle for others who may be breaking into vehicles parked in the hotel parking lots. Therefore, he elected to check the vehicle and investigate for any signs of criminal activity.

6.      Lt. Baxley observed the vehicle occupied by two individuals who appeared to be asleep in their seats, which were leaning back. Lt. Baxley parked behind the vehicle, which displayed a South Carolina registration plate. Lt. Baxley exited his patrol vehicle, approached the right passenger side of the running vehicle, and aimed his flashlight in the rear seat to check for additional occupants, contraband, or weapons. He observed several silver packages stacked in the seat with a large clear bag containing a green leafy material, consistent with marijuana. He then walked behind the vehicle to the left-rear door to confirm the contents of the large clear bag. Based on his training and experience, it looked to be dry, harvested cannabis.

7.      The occupants of the vehicle remained asleep during this time. Lt. Baxley immediately requested Officer Eason to respond to the scene and assist in the

3

investigation. Due to the quantity of suspected narcotics, he also requested a Randolph

County Sheriff Deputy to respond to the scene. While waiting for Officer Eason to arrive,

Lt. Baxley observed the driver starting to wake-up and move around. Lt. Baxley opened

the driver`s side door and ordered both occupants at gun point to show their hands. Both

subjects complied with Lt. Baxley`s request and placed their arms/hands in front of

them. Lt. Baxley then ordered the driver, William Charles FRYE III, to exit the

vehicle. FRYE exited the vehicle and was detained. At 3:57 a.m., Officer Eason arrived

on scene to assist. Officer Eason stood with FRYE while Lt. Baxley detained the passenger

(C.P.). Once FRYE and C.P. were detained, they were asked to sit on the curb. FRYE

asked Lt. Baxley why he was being detained and why he was ordered out of the vehicle. Lt.

Baxley advised FRYE that he observed a large quantity of what appeared to be marijuana

in the rear seat of the vehicle, paired with the strong odor of marijuana. FRYE advised that

the material was hemp and denied that it was marijuana. FRYE was checked for weapons,

and Lt. Baxley found U.S. currency (approximately $8,852.23) in a First Citizen's Bank

envelope in FRYE's left front pants pocket. Lt. Baxley also found more U.S. currency

(approximately $3,460.00) in FRYE's right front pants pocket. Officer Eason supervised

the occupants while Lt. Baxley began searching the vehicle.

     8.     Randolph County Deputy Vosler arrived on scene at 4:14 a.m. While

searching the rear seat of the vehicle, Lt. Baxley located multiple vacuum sealed packages

of green material that had the appearance, texture, color, and odor of marijuana (one

package was cut open). He also located a white five-gallon bucket approximately a quarter

full of loose green plant material consistent with marijuana. Next, he searched the trunk

4

of the vehicle, and located two black plastic storage bins containing additional silver and clear vacuum-sealed packages of green plant material. Also in the trunk were additional silver packages, a blue duffle bag containing clothing items, toiletries, a mason jar containing approximately $3,226.00 in U.S. currency, a clear Ziploc bag containing approximately $2,850.00 in U.S. currency, and a First Citizens Bank envelope inside a Ziploc bag containing approximately $10,319.00 in U.S. currency.

9.     FRYE advised that he and C.P. were from Lexington, South Carolina, and had traveled to various hemp farms in Gastonia, Washington, and Greenville, North Carolina, to purchase approximately $11,000.00 of harvested hemp for transport to the Mellow Hemp Company in Charlotte, North Carolina. Lt. Baxley reiterated his suspicion that the material appeared to be marijuana. FRYE was adamant that the plant material was hemp and that he had a "Certificate of Analysis" (COA) on his phone that would confirm the material was hemp. FRYE was unable to provide any documentation to Lt. Baxley that provided proof of his travels, receipt of purchase, and/or ownership of his distribution business. Due to the lack of corroborating documentation, Lt. Baxley did not view the document on FRYE's phone. Lt. Baxley then pointed out that it was uncommon for business owners to transport large sums of cash in low denominations in a mason jar, large sums of cash in a Ziploc bag, and in various locations in the vehicle and in his pants pockets. FRYE advised that the hemp farmers would not accept checks, only cash. Lt. Baxley advised FRYE that the fact that the hemp farmers would not accept checks created additional skepticism of the operation due to the apparent attempt to avoid taxation on the

5

hemp crops. FRYE stated that all the money on him and in the vehicle, as well as the plant product, was his.

10.    Officer Eason conducted a field test kit for Marijuana/Hashish/THC, which had a delayed positive reading. Lt. Baxley retrieved the same type of field test kit and tested material located inside the white plastic bucket, which immediately tested positive for Marijuana/Hashish/THC. Lt. Baxley contacted me requesting my assistance, and shared the results along with information about the approximate weight (50 lbs. per FRYE) of the packages and the large sum of U.S. currency. I arrived on scene at 4:35 a.m.

11.    After my arrival, I spoke with other DEA personnel and determined the suspected marijuana would be seized for further testing. I assumed custody of the evidence and entered the evidence for storage. Three samples of the seized material were collected from three different, randomly-selected product bags and sent to AVAZYME, an agricultural and food testing laboratory, for analysis.

12.    Lt. Baxley aggregated and seized the U.S. currency as drug proceeds and transported it to APD. Both subjects agreed to follow officers to APD and provide statements. In a written statement, FRYE stated that he had a total of approximately 45 pounds of hemp and hemp flower which was purchased or consigned from hemp growers in North Carolina.

13.    I contacted the High Point Police Department (HPPD) and requested a K-9 to conduct a free air sniff of the U.S. currency seized. Master Police Officer Derrick McNeal responded to APD with his K-9 Ronnie. I hid the U.S. currency and K-9 Ronnie was sent in to conduct a free air sniff during which he located the U.S. currency and alerted

6

to the presence of narcotics. This was completed on September 11, 2019 at approximately 6:00 a.m.

14. Officer Derrick McNeal has been a sworn officer with HPPD since January 19, 2001. Officer McNeal was previously assigned to the HPPD's Vice/Narcotics Unit as an undercover Vice/Narcotics Detective from 2006 to 2013. He is currently assigned to the HPPD's Canine Unit along with his assigned police K-9 "Ronnie". Officer McNeal has made at least (500) drug related charges since employed with HPPD. Between Basic Law Enforcement Training (BLET) and the present, Officer McNeal has obtained approximately (2,763) hours in additional police training. Officer McNeal's narcotics related training is as follows: Regional Counterdrug Training Academy Advanced Undercover Operations course (FBI`s equivalent to undercover covert operations for local and state undercover narcotics officers/detectives); Methamphetamine and Clandestine Laboratory Safety Certification and yearly re-certification; Clandestine Lab Pack Techniques for Advanced Environmental Options; Risk Management in Undercover Operations Stages of any Covert Operation and Reality of Undercover; Use of Drug Informants; Domestic Drug Interdiction; Drug Diversion; NC Narcotics Enforcement Officers Association 2008 Spring Conference and 2009 Spring Conference; Undercover Operations and Tactical Responses/Use of Drug Informants; Vice Narcotics Training; Vehicle Assaults/Vehicle Take Downs During Pre-Planned Narcotics Operations; O.C.D.E.T.F. (Organized Crime Drug Enforcement Task Force 2006 Winter Conference); Police Law Institute (PLI); Arrest Search and Seizure; Controlled Substances; Criminal Interdiction for Patrol; Indoor Marijuana Grow Operations; Indoor Clandestine Laboratory

7

Operations; Street Drug Enforcement; Plain Feel Touch on Frisks; In House Methamphetamine State Lab Training; Interview and Interrogation; YOGI ATF Firearms Identification and Tracking; Methamphetamine Awareness; Search Warrant Dynamic Entries; Street Narcotics Investigations; Firearms on Search Warrants Training; Protective Tactics/Search Warrant Entries; ATF firearms; Critical Incident/Person/Vehicle Searches; Use of Canines on Narcotic/Drug Searches; Consensual Encounters/Searching; training on synthetic cannabinoids and Bath Salts testing; NC SBI Seminar on Identification and Prosecution of Designer Drugs Synthetic Cannabinoids/Bath Salts.

15.     Officer McNeal has been the issuing case Officer/Detective on (65) narcotics related search warrants resulting in felony arrests and the seizing of various legal and illegal narcotics, cash, firearms, stolen property, wanted subjects, and paraphernalia. Officer McNeal has assisted on the execution on over at least (150) search warrants.  Officer McNeal has worked a large number of undercover cases personally making undercover purchases of various narcotics to include the following: (heroin, crack cocaine, powder cocaine, ecstasy (MDMA), controlled prescription medication, Illegal Steroids, Synthetic Cannabinoids (Bath Salt compounds and marijuana), gambling, alcohol and prostitution cases which have been prosecuted and convicted in both State and Federal Courts.

16.     K-9 "Ronnie" is dual purpose passive alert Belgium Malinois trained in the fields of narcotics detection, human tracking, article/evidence searching, human apprehension, and building searching.  Canine Ronnie and Officer McNeal have completed the 160-hour training High Point Police Department Dual Purpose Canine Handler School and have been working as a K-9 team since April of 2019.  K-9 Ronnie and Officer McNeal

8

are certified in both Patrol and Narcotics through the National Narcotics Detector Dog Association (NNDDA). Canine Ronnie is trained in the detection of specific odors of narcotics to include, Marijuana, Cocaine, Heroin, Methamphetamine, and Ecstasy. Since K-9 Ronnie has been assigned to Officer McNeal, K-9 Ronnie has alerted to the presence of narcotic odor several times outside of training where narcotics have been located and seized. K-9 Ronnie has also successfully apprehended suspects on K-9 Tracks, area searches, and while in officer/handler protections. K-9 Ronnie has also successfully located items of all sorts of evidence during the execution of article/evidence location and recovery searches. K-9 Ronnie and Officer McNeal continue with regularly scheduled (10) ten-hour unit canine training days throughout the year in addition to individual canine team training throughout their shifts while working and yearly attendance to Canine seminars. Officer McNeal maintains a record of all individual canine training and deployment records that are available on both digital and paper copies. K-9 Ronnie is Officer McNeal's third police working dog since Officer McNeal has been assigned to the HPPD Canine Unit.

17.     Delta-9 tetrahydrocannabinol, or THC ("THC") is the primary intoxicating component in cannabis, or marijuana. Federal law distinguishes hemp from marijuana based on the amount of THC in the plant:

> [T]he term "hemp" means the plant species *Cannabis sativa* L. and any part of that plant, including the seeds thereof . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.. . .   Cannabis with a THC level exceeding 0.3 percent is considered marijuana.

Fed. R. 58523.

18.     On September 17, 2019, I received the test results for the three samples of plant material submitted to AVAZYME.   The results showed that all three samples had a

9

THC concentration greater than 0.3% on a dry weight basis (specifically, 0.37%, 0.39%, and 0.45%). Based on these results, the material is marijuana under federal law.

19.    I contacted Phillip Wilson, Director of the Plant Industry division of the North Carolina Department of Agriculture. Mr. Wilson stated the Department of Agriculture advises individuals in the hemp industry to maintain invoices for the product on hand and certificates of analysis from the Department of Agriculture. When I discussed the circumstances of FRYE'S case, Mr. Wilson stated that the farm(s) where the product came from and FRYE should have known what documentation he needed to have on hand to legally transport and sell hemp products.

20.    On September 23, 2019, warrants were issued in Randolph County, North Carolina, charging FRYE with felony possession with intent to sell and deliver marijuana, maintaining a vehicle for a controlled substance, and felony possession of marijuana. The warrants have not yet been served.

21.    On September 20, 2019, FRYE sent me an invoice from "Southern Virginia Hemp Company LLC from Jarratt, Virginia, and a Certificate of Analysis from "Altitude Consulting." The invoice was dated September 11, 2019. The seizure was September 11, 2019, at approximately 4:00 a.m. This invoice contradicts FRYE's statements regarding where and when he obtained the product.

22.    On or about October 30, 2019, three additional samples of material seized from FRYE were collected and submitted to AVAZYME for analysis. These three samples came from different bags than the samples tested in September. Of these three samples, only one sample had a THC concentration greater than 0.3% on a dry weight basis

10

(specifically, 0.38%).

23.     On October 7, 2019, the State Employee's Credit Union (SECU) conducted an official count of the U.S. currency, and issued a check in the amount of $28,727.23 ($20.00 more than the total of the amounts estimated at the time of the vehicle stop). The check was turned over to the U.S. Marshal's Service for deposit to the Seized Asset Deposit Fund Account.

24.     DEA adopted the seizure of the $28,727.23 in U.S. currency and began administrative forfeiture proceedings. Notice of the forfeiture proceeding was posted on the internet at www.forfeiture.gov for a period of thirty days commencing on November 4, 2019 and ending on December 3, 2019. On February 12, 2020, DEA received a claim to the defendant property from FRYE. Because a claim was filed, the administrative process was terminated and the seizure was referred to the U.S. Attorney's Office for judicial forfeiture.

## CONCLUSION

25.     Based upon the foregoing, I am of the opinion that there is probable cause to believe that the $28,727.23 in U.S. currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

11

This the 12th day of May, 2020.

Anthony W. Cugino
Task Force Officer
Drug Enforcement Administration

12